**Affirmed and Opinion Filed September 11, 2023**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-23-00533-CV**

**IN THE INTEREST OF S.M.M., Z.J.L.L., J.E.L.,**
**L.J.L., AND L.L.L., CHILDREN**

**On Appeal from the 305th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. JC-22-0123-X**

## MEMORANDUM OPINION

Before Justices Nowell, Goldstein, and Breedlove
Opinion by Justice Breedlove

The trial court terminated Mother's parental rights to her children S.M.M., Z.J.L.L., J.E.L., L.J.L., and L.L.L. by a decree dated May 22, 2023. Mother appeals, contending in two issues that the evidence is legally and factually insufficient to support the trial court's finding that termination is in the children's best interest. Concluding that the evidence was sufficient to support the finding and to support termination of Mother's parental rights, we affirm the trial court's judgment. Because the issues are well-settled, we issue this memorandum opinion. TEX. R. APP. P. 47.4.

BACKGROUND

Mother's five children who are the subjects of this suit were born between 2006 and 2017. At the time of trial, S.M.M. ("David")[1] was 17, Z.J.L.L. ("Olivia") was 12, J.E.L. ("Henry") was 11, L.J.L. ("James") was 7, and L.L.L. ("William") was 5. David's father is deceased. Olivia and Henry have the same father ("Father J"), who requested to be adjudicated as their father at trial. James and William have the same father ("Father D"), whose parental rights were terminated at trial.

The case proceeded to trial on May 9, 2023. Teleisha Terry, a supervisor, testified on behalf of the Texas Department of Family and Protective Services (Department).

Terry explained that the Department became aware of the family in December 2021 when Mother was "briefly incarcerated," and the children were removed from Mother's care in February 2022. Mother and the children had moved to Texas from Pennsylvania "to get away from [Father D], due to a domestic violence relationship with him." A Department investigation of Mother's residence in February 2022 revealed that "the home was completely filthy," with no beds for the children, little or no other furniture, no food, and no working utilities. There were animal feces and urine on the floor. The Department informed Mother that the children could not live

---

[1] Because there are five children at issue, we have departed from the Court's usual practice of identifying children by their initials and instead, for clarity, have given each child a fictitious name.

in the home given its condition. Mother then gave the Department permission to take the children.

The children were placed in foster care, and Mother was ordered to participate in services including parenting classes, a psychological evaluation, individual counseling, a drug and alcohol assessment, random drug testing, and domestic violence counseling. Terry testified that Mother did not participate in any services, but on cross-examination, admitted that the plan was never presented to Mother because the Department was unable to locate her. The Department located Mother when Mother was taken into custody in March 2023. Mother at first denied having any children, and then denied that there was any Department proceeding involving the children.

Terry testified that Mother did not provide the names of any relatives, next of kin, or any other person who might be able to care for the children. The Department located Mother's mother (Grandmother) in Pennsylvania and conducted a preliminary assessment, but due to Grandmother's health issues and other problems, declined to conduct a full home study. A maternal uncle and a maternal aunt were willing to be a part of the children's lives but did not want the children to be placed with them.

Terry testified that at the time of the children's removal from the home, David had not been in school for approximately three years.[2] David, although 17, was performing at the ninth grade level at the time of trial, but was making good progress in school in special education curriculum. He is on the autism spectrum. Terry testified that Mother kept David out of school because of the appearance of his front teeth,[3] but surgery was now scheduled to correct the problem.

At the time of trial, David and Henry were living with the same foster family. Olivia was living with a different foster family, but often visited. Terry testified that the Department had reached a mediated settlement agreement with Father J, Olivia and Henry's father. Terry explained that if Father J could produce two clean drug tests within a prescribed period of time and meet certain other conditions, Olivia and Henry would return to his care. If not, he would permit the children to be adopted.

Terry testified that James and William are living in the same foster home and the foster parents want to adopt them. Both children are receiving speech, behavioral, and play therapy. James is to start physical therapy to correct "an issue with his foot." James, in the first grade, and William, in pre-kindergarten, were scheduled to attend second grade and kindergarten in the next school year.

---

[2] On cross-examination, Terry conceded that it was possible David had attended school remotely during the pandemic.

[3] Terry testified to David's explanation to a Department worker: "Q. And his explanation [for not attending school for three years] was because [Mother] told him that because his two front teeth were turned upside down [in] his gums, that appearance is everything so he could not go to school looking like that? . . . A. Yes."

On questioning by the children's guardian ad litem Gina Clark, Terry testified that to her knowledge, the children had not suffered from not being able to see their mother. Terry admitted, however, that both Olivia and Henry had behavioral issues, and Olivia had been in "many different placements" including a "behavioral center" due to those issues. Terry testified, however, that Olivia is "doing much better now." Both Olivia and Henry are receiving therapy, as is David. Despite Olivia's behavioral issues, she was receiving "fairly good grades" at school. Henry, in the fifth grade, was receiving As and Bs.

Terry testified that Mother has a criminal history, including a pending possession of a controlled substance case. Mother pleaded guilty to a charge of resisting arrest in Dallas County in 2021 for which she received a sentence of 45 days in jail. Mother was also charged with aggravated assault. Terry concluded that terminating Mother's parental rights was in the children's best interest.

Larry Dolan, the children's advocate through CASA (Court Appointed Special Advocates), testified that he had worked with the children from the outset of the case and believed that it was in their best interest to carry out the Department's plans for them. He testified that the children were "adjusting well," the "placements are good," and "we have no concerns going forward." On cross-examination, he testified that Olivia asked about Mother "in the very beginning," but he could not recall any of the other children "ever bringing that up." Although he had permission to speak to Mother, he was not able to do so because he could not locate her.

Mother did not testify, but her counsel requested that she be given additional time to resolve "her criminal matter" before any termination of her rights. Counsel argued that Mother had given the Department the names of individuals who might care for her children while she is resolving the criminal matter and getting "back on her feet" to have a relationship with the children. Counsel also argued that given the Department's agreement with Father J as to Olivia and Henry, there was no reason to terminate Mother's rights to those children. Counsel concluded that because there is "no functional long-term parenting plan" for the children, termination of Mother's rights is not in the children's best interest.

The guardian ad litem argued that the Department's plan was in the children's best interest. The Department waived closing argument.

The trial court made its ruling in a hearing on May 17, 2023. Mother was present with her counsel. The court appointed the Department as permanent managing conservator for all of the children. The court terminated the parental rights of Father D and of any unknown father, adopted the mediated settlement agreement as to Olivia, Henry, and their Father J, and terminated Mother's parental rights to each of the children, explaining:

> COURT: Okay. All right, the Court finds at this time by clear and convincing evidence that the mother has committed the conduct as defined by Section 161.001-[b]1-D and E of the Family Code. That termination of the parent-child relationship between the mother and the children will be in the children's best interest, mother's rights are terminated. . . . .

To support the termination of the mother, these children, apparently, suffered from some pretty severe neglect and their needs not being taken care of—

[MOTHER]: Liar.

COURT: —the mother has a history of methamphetamine use. . . . She has not been available during the course of this case, pretty much, she has not visited with [these] children, had any contact, availed herself for any type of services in order to be in a position to be able to provide for the physical or emotional well-being of these children. The Court finds that the Department has an appropriate plan, that in the immediate future, it does not appear the mother will not [sic] be able to meet the physical or emotional needs of these children, now or in the future. These children have some special needs, there's no evidence that she will be able to provide for them in any way.

In the subsequent decree of termination, the trial court made findings, by clear and convincing evidence, that Mother knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being, and knowingly placed the children with persons who engaged in conduct which endangered their physical or emotional well-being. TEX. FAM. CODE ANN. §§ 161.001(b)(1)(D) and (E). The court also found that termination of the parent-child relationship between Mother and David, Olivia, Henry, James, and William is in the children's best interest. *Id.* § 161.001(b)(2).

This appeal followed. In two issues, Mother contends the evidence is legally and factually insufficient to support the trial court's findings that terminating her parental rights to her five children was in the children's best interest.

Parental rights may be terminated only if the court finds by clear and convincing evidence that (1) the parent has committed an act prohibited by section 161.001(b) of the Texas Family Code and (2) termination is in the child's best interest. TEX. FAM. CODE ANN. § 161.001. Although Mother challenges only the second of these findings, we must "undertake an exacting review of the entire record" because of "the constitutional issues at stake." *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014) (internal quotations omitted).

To terminate under section 161.001(b)(1)(D) and (E), as the trial court did here, the court must find the parent has "knowingly placed or knowingly allowed the child[ren] to remain in conditions or surroundings which endanger the physical or emotional well-being of the child[ren]," *id.* § 161.001(b)(1)(D), and has "engaged in conduct or knowingly placed the child[ren] with persons who engaged in conduct which endangers the physical or emotional well-being of the child[ren]," *id.* § 161.001(b)(1)(E).

Paragraph (D) concerns endangerment due to the child's environment, *In re J.D.B.*, 435 S.W.3d 452, 463 (Tex. App.—Dallas 2014, no pet.), while paragraph (E) addresses endangerment by parental misconduct, *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). "'[E]ndanger' means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, [but] it is not necessary that the conduct be directed at the child

or that the child actually suffers injury." *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987).

Parental conduct is relevant under both paragraphs. *In re J.D.B.*, 435 S.W.3d at 463. A parent's drug use, violence, or other abuse may make the child's environment endangering to the child. *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). A parent acts "knowingly" when the parent is aware that the environment creates a potential danger to the child but the parent disregards that risk. *See In re P.N.T.*, 580 S.W.3d 331, 355 (Tex. App.—Houston [14th Dist.] 2019, pet. denied); *In re L.M.M.*, 522 S.W.3d 34, 44 (Tex. App.—Houston [1st Dist.] 2017, pet. denied).

Mother's issues challenge the trial court's best interest findings under subsection 161.001(b)(2). A judicial determination of the "best interest" of a child is "not dependent upon, or equivalent to, a finding that the child has been harmed by abuse or neglect or is in danger of such harm. Rather, 'best interest' is a term of art encompassing a much broader, facts-and-circumstances based evaluation that is accorded significant discretion." *In re Lee,* 411 S.W.3d 445, 460 (Tex. 2013) (orig. proceeding) (plurality op.). The supreme court has identified nine nonexclusive factors that may assist our review of a best interest finding, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the person seeking custody; (5) the programs available to assist

the person seeking custody in promoting the best interest of the child; (6) plans for the child by the person seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams,* 544 S.W.2d 367, 371–72 (Tex. 1976); *see also In re E.C.R.,* 402 S.W.3d 239, 249 (Tex. 2013) (in reviewing a best-interest finding, appellate court "consider[s], among other evidence, the *Holley* factors").

These factors are not exhaustive. *In re C.H.,* 89 S.W.3d 17, 27 (Tex. 2002). Some of the listed factors may be inapplicable to a case and other factors not on the list may also be considered when appropriate. *In re D.W.*, 445 S.W.3d 913, 925 (Tex. App.—Dallas 2014, pet. denied). "A best interest finding need not be supported by evidence of every *Holley* factor, particularly if there is undisputed evidence that the parental relationship endangered the child's safety." *Interest of C.V.L.*, 591 S.W.3d 734, 753 (Tex. App.—Dallas 2019, pet. denied). On the other hand, the presence of scant evidence relevant to each factor will not support such a finding. *Id.* Evidence of one of the predicate acts for termination under family code § 161.001 may also be relevant to determining the best interest of the child. *In re D.W.*, 445 S.W.3d at 925. While there is a strong presumption that a child's best interest is served by maintaining the parent-child relationship, *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam) (citing TEX. FAM. CODE ANN. § 153.131(b)), the prompt and

permanent placement of the child in a safe environment is also presumed to be in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a).[4]

STANDARD OF REVIEW

Due to the severity and permanency of the termination of parental rights, an appellate court applies a heightened standard in reviewing the sufficiency of the evidence to support a termination. *See In re E.N.C.,* 384 S.W.3d 796, 802 (Tex. 2012); *In re J.A.S.C.*, 430 S.W.3d 544, 548 (Tex. App.—Dallas 2014, no pet.). The question the appellate court must answer is whether the proof is such that a reasonable fact finder could have formed a firm belief or conviction about the truth of the allegations. *See In re J.F.C.,* 96 S.W.3d 256, 265–66 (Tex. 2002).

In reviewing the legal sufficiency of the evidence, the court considers all the evidence in the light most favorable to the finding. *Id.* at 266. In conducting this review, the court assumes the fact finder resolved disputed facts in favor of the finding if a reasonable fact finder could do so and disregards all evidence that a

---

[4] Subsection (b) of family code § 263.307 also includes factors to consider when determining a child's best interest and "whether the child's parents are willing and able to provide the child with a safe environment." These factors include, among other matters, the child's age and physical and mental vulnerabilities; the frequency and nature of out-of-home placements; the magnitude, frequency, and circumstances of the harm to the child; the willingness and ability of the child's family to effect positive environmental and personal changes; whether there is a history of substance abuse by the child's family or others who have access to the child's home; the family's willingness and ability to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; and whether the child's family demonstrates adequate parenting skills. TEX. FAM. CODE ANN. § 263.307(b); *In re J.D.B.*, 435 S.W.3d at 467. Our discussion here focuses on the *Holley* factors because Mother's issues address only those factors. *See In re J.D.B.*, 435 S.W.3d at 467 (limiting discussion to parents' specific challenges).

–11–

reasonable fact finder could have disbelieved or found to have been incredible. *Id.* In reviewing the factual sufficiency of the evidence, the court considers disputed and conflicting evidence and will conclude the evidence is insufficient only if, in light of the entire record, it determines the disputed evidence is so significant that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. *Id.*

## BEST INTEREST

Citing *Holley*, Mother challenges the legal and factual sufficiency of the evidence to support the trial court's findings and conclusions that termination of her parental rights is in the children's best interest. *See Holley*, 544 S.W.2d at 371–72. We review the arguments and evidence pertinent to each factor.

**The children's desires:** Mother argues there is no evidence relevant to this factor. The Department cites Terry's testimony of her understanding that Olivia and Henry want to live with their father (Father J). Dolan testified that "in the very beginning," Olivia asked about Mother, but he could not "recall the other children ever bringing that up" at any time. Accordingly, this factor is neutral or weighs slightly in support of termination.

**The children's physical and emotional needs now and in the future:** David is on the autism spectrum and receives special education courses. He had not been in school for three years at the time of his removal, but Terry testified that he has

made "a lot of progress" in catching up in his classes and grade level. He is scheduled to have surgery to fix his dental problems.

Olivia and Henry have behavioral issues. Olivia's were so severe that she required a two-week placement in a behavioral center, but Terry testified that "she's doing much better now." Both Olivia and Henry are attending school regularly, and both are receiving good grades.

James and William attend regular speech, behavioral, and play therapy. William is also scheduled to begin physical therapy for "an issue with his foot," according to Terry.

The evidence shows that all of the children receive some type of therapy. All have specific needs that were not being met in Mother's care, nor was there any evidence of Mother's ability to provide for the children's physical and emotional needs in the future.

This factor weighs in favor of termination of Mother's parental rights.

**The emotional and physical danger to the children now and in the future:** Mother concedes that evidence of the children's living conditions when Department removed them might support termination on this ground. Terry testified that there were no beds for the children, no furniture or food in the home, and no working utilities. There was rat and other animal excrement on the floor, and there was urine on the floor throughout the house.

The Department also cites evidence that Mother presents an emotional danger to the children. Before the children's removal from the home, Mother could be heard yelling at the children and blaming them for the Department's involvement. She told the Department it could have the children when they were removed. The Department did not know Mother's whereabouts during the pendency of the case. Mother never contacted the Department. When the Department located Mother, in jail, a worker went to visit Mother to ask what she wanted to do regarding her children. Mother denied having any children. On a second visit, Mother denied there was any case pending with the Department.

This factor weighs heavily in favor of termination.

**The parental abilities of the individuals seeking custody:** Mother argues the Department failed to offer any evidence of her parental abilities other than the condition of her home at the time of the children's removal. She cites her positive action to leave her home in Pennsylvania to escape domestic violence. Mother argues that her move to Texas where she lacked support "could have led to the living conditions of the children." She contends that the Department will be the children's managing conservator in any event. And she argues there is no evidence of foster families' parental abilities except that the children are doing well and receiving therapy.

The Department concedes there was no testimony directly addressing Mother's parental abilities, but cites circumstantial evidence including (1) Mother's

denial that she had any children, (2) Mother's statement that the Department could have the children when they were removed from her home, (3) Mother made no attempt to visit or check on the children for much of the time when they were in the Department's care, (4) the children were not bathed and were wearing stained clothing when they were removed, (5) Mother kept David out of school and chose to hide his dental problems rather than fix them, (6) the children were living in filth, and (7) Mother admitted to using methamphetamine at the time of the children's removal, which the Department contends was "a far more likely" reason for the conditions in which the children were found, rather than any lack of support.

This factor weighs in favor of termination.

**The programs available to assist those seeking custody in promoting the children's best interest:** Mother argues that the Department failed to meet its burden on this factor because it did not present evidence other than the children's current therapy. The Department replies that Mother was directed to programs to assist her in promoting the children's best interest, including parenting classes, a psychological evaluation, individual counseling, a drug and alcohol assessment, random drug testing, and domestic violence counseling, but did not participate in any of these services. Further, Mother did not participate in any part of the Department's investigation except for the trial itself. While Mother correctly argues that the Department did not present evidence about programs available to the children in foster care or after adoption, there was evidence that the children either

had received or were scheduled to receive needed medical care and counseling. This factor weighs slightly in favor of termination.

**The plans for children by those seeking custody:** Mother concedes there is no evidence of her plans for the children, but also argues that the Department's plans for adoption of David, James, and William and placement of Olivia and Henry with their father do not support a finding that termination of her parental rights is in the children's best interest. There was evidence, however, that foster parents had provided therapy and care to David, James, and William and wanted to adopt them,[5] and the Department and Father J had plans that would allow Father J to become Olivia and Henry's managing conservator. This factor weighs in favor of termination.

**The stability of the home or proposed placement**: Mother concedes this factor could support termination due to her incarceration at the time of trial and the lack of evidence about her home other than its condition when the children were removed. Further, the record reflects that the children were receiving needed support and care in foster homes with families who could provide long-term care and, for some of the children, adoption. This factor weighs in favor of termination.

---

[5] Terry testified that because David was 17 at the time of trial but had not yet completed high school, his foster parents' current plan was "to keep him indefinitely," "long-term," "so he can get caught up on school, graduate and the next two years receive the benefits for his disability." Given David's age, however, plans for adoption were not yet clear.

**The parent's acts or omissions that may indicate the parent/child relationship is not a proper one:** Mother favorably cites her move to Texas to escape domestic violence, but concedes that the condition of the home at the time of the children's removal and her incarceration at time of trial could indicate that the parent/child relationship is not a proper one. This factor weighs in favor of termination.

**Any excuse for the parent's acts or omissions:** Mother did not present evidence on this factor, so she concedes this factor could support termination of her parental rights.

**Conclusion:** Mother concludes that there is not enough evidence to overcome the presumption that a child should be with a biological parent, citing *In re J.W.*, 152 S.W.3d 200, 207 Tex. App.—Dallas 2005, pet. denied). She argues that a reasonable fact finder could not form a firm belief or conviction that termination of her parental rights is in the children's best interest. She contends that because the evidence is insufficient, we must reverse the trial court's judgment and remand for a new trial.

In *In re J.W.*, we noted, "we are mindful that there is a strong presumption that the child's best interest is served by keeping custody in the natural parent." *Id.* We concluded, however, that the evidence was legally and factually sufficient to support termination of a father's parental rights—even though the father was no longer involved with drugs, was employed, and had remarried—where there was additional evidence that his new wife "may pose a risk to J.W" due to her ongoing

alcohol abuse and tendency to be physically violent, and there was other evidence that, if believed by the jury, weighed in favor of termination. *Id.* at 207–08.

Here, there is no such favorable evidence; instead, the evidence tends to rebut the presumption that the children's best interest will be served by remaining in Mother's custody. We conclude "the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations," and accordingly, the evidence was legally and factually sufficient to support the trial court's judgment. *In re J.F.C.*, 96 S.W.3d at 264 (internal quotation omitted).

We decide Mother's issues against her.

### CONCLUSION

The trial court's judgment is affirmed.

230533f.p05

/Maricela Breedlove/
MARICELA BREEDLOVE
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF S.M.M., Z.J.L.L., J.E.L., L.J.L., and L.L.L, CHILDREN

No. 05-23-00533-CV

On Appeal from the 305th Judicial District Court, Dallas County, Texas Trial Court Cause No. JC-22-0123-X. Opinion delivered by Justice Breedlove. Justices Nowell and Goldstein participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 11th day of September, 2023.